## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **VINCENT DIAL,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:14-cv-01297-RDP** |
| | } | |
| **CITY OF BESSEMER; ZACHARY** | } | |
| **SCOTT OSBORNE, individually and in his** | } | |
| **official capacity as a police officer with the** | } | |
| **City of Bessemer Police Department,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

### I.    Introduction

This case is before the court on Defendants' Motions for Judgment on the Pleadings (Doc. # 27, 29), filed October 27, 2015.  The Motions are fully briefed.  (Docs. # 28, 30, 35, 36, 37).  Also before the court is Plaintiff's First Amended Complaint, which the court construes as a motion for leave to amend.  (Doc. # 34).  The court held oral argument on April 26, 2015.  After careful review, and for the following reasons, Plaintiff's motion to amend his complaint is due to be denied, and Defendants' motions for judgment on the pleadings are due to be granted.

### II.    Background Facts and Procedural History[1]

Plaintiff owns a consignment shop in Bessemer, Alabama.  (Doc. # 1 at ¶ 5).  On July 9, 2012, Plaintiff was preparing to close the shop for the day, when Defendant Officer Zachary

---

[1] The facts are gleaned from Plaintiff's Complaint (Doc. # 1), which the court accepts as true and construes in the light most favorable to Plaintiff.  *See In re Northlake Foods, Inc.*, 715 F.3d 1251, 1255 (11th Cir. 2013). These are the facts for purposes of the motion for judgment on the pleadings.  They are not necessarily the facts that might be established through discovery or proved at a trial.

Scott Osborne approached him.  (*Id.* at ¶ 7).  Osborne asked him the location of an individual named "Brent."  (*Id.*).  When Plaintiff could not answer Osborne's questions, Osborne grew angry and "threatened" him.  (*Id.* at ¶ 8).  These threats included abusive language and a warning that Plaintiff would be pulled over every time his car was seen in the City of Bessemer.  (*Id.* at ¶ 9).  Plaintiff feared for his own safety, as well as the safety of an unnamed employee.  (*Id.* at ¶ 10).  The Complaint does not specify whether Plaintiff was inside or outside his shop at the time, nor does it indicate whether the unnamed employee was present.

Suddenly, and "without justification," Osborne grabbed Plaintiff's arm and "threw" him into the back of Osborne's patrol car.  (Doc. # 1 at ¶ 11).  Osborne also bent Plaintiff's wrist in order to obtain his driver's license.  (*Id.*).  Plaintiff alleges that Osborne's actions physically injured his arm and wrist.  (*Id.*).

Additional on-duty police officers working for Defendant the City of Bessemer, including a canine unit, then arrived on the scene.  (Doc. # 1 at ¶¶ 12, 17).  The officers did not have a warrant and allegedly "had no probable cause," but conducted a search of the premises.  (*Id.* at ¶ 13).  After approximately thirty minutes, an unnamed and unidentified officer "who was out of the view of everyone else" emerged from an undescribed location with a "roach" of marijuana.  (*Id.*).  The officers then publicly placed Plaintiff under arrest "in front of his place of business."  (*Id.* at ¶¶ 14, 16).  When the officers handcuffed Plaintiff, they affixed the handcuffs so tightly that it hurt him.  (*Id.*).  Plaintiff complained to the officers, but they ignored him and refused to provide emergency medical care.  (*Id.* at ¶¶ 14-15).

Plaintiff continued to receive medical care for his physical injuries at the time of the filing of the Complaint.  (Doc. # 1 at ¶ 15).  He also avers his public arrest caused him emotional

distress and mental anguish, and damaged his business reputation so badly that he had to close his shop.  (*Id.* at ¶ 16).

According to Plaintiff, the City of Bessemer had previously implemented a policy prior to (and which was in effect during) the June 9, 2012 incident, whereby police officers were "required, trained, instructed and encouraged . . . to detain, handcuff, arrest and/or incarcerate individuals who had" committed no crimes and had no acts which would provide probable cause. (Doc. # 1 at ¶¶ 18-19, 27-28).   Plaintiff also alleges that the City adopted and approved Osborne's unlawful actions toward him because it is the final policymaker and official decision maker with regard to hiring, training, supervision, and retention of City police officers.  (*Id.* at ¶¶ 22-28).

On July 7, 2014, Plaintiff filed his Complaint advancing the following causes of action pursuant to 42 U.S.C. § 1983 and the court's supplemental jurisdiction: (1) use of excessive force and unreasonable search and seizure under the Fourth and Fourteenth Amendments; (2) declaratory and injunctive relief concerning the City's alleged policy; (3) breach of the duty to properly supervise police officers; (4) breach of the duty to properly train police officers; (5) breach of the duty to properly retain police officers; (6) false imprisonment under the Fourth and Fourteenth Amendments; and (7) assault and battery.[2]

After a series of events concerning Plaintiff's bankruptcy and related proceedings (the details of which do not pertain to the Motions under consideration), Defendants filed their Answers on July 31, 2015.  (Docs. # 22, 23).  Defendants filed the subject motions for judgment on the pleadings on October 27, 2015.  (Docs. # 27, 29).  In its supporting brief, the City argues as follows: (1) Plaintiff has failed to plausibly allege an unconstitutional municipal policy; (2)

---

[2] Plaintiff initially pled a negligence count, but later informed the court that he abandoned it.  Therefore, the court need not address it.

Plaintiff lacks standing to seek declaratory and injunctive relief; (3) Plaintiff's state law claims for negligent supervision, training, and retention by a municipality are not cognizable under Alabama law; (4) Bessemer cannot be held liable for the intentional torts of assault and battery; and (5) punitive damages cannot be recovered from a municipality.  (Doc. # 28).  Osborne reads three counts as directly stating claims against him: excessive force and unreasonable search and seizure, false imprisonment, and assault and battery.  (Doc. # 30).  Concerning these three claims, Osborne contends that he is entitled to qualified immunity, and that any force used against Plaintiff was *de minimis*, thereby defeating the assault and battery claim.  (*Id.*).

Plaintiff filed an omnibus opposition brief on November 18, 2015.  (Doc. # 35). Regarding the City, he asserts he adequately alleged an unconstitutional policy, and that Section 11-47-190 of the Alabama Code provides municipality liability for the acts of its agents.  (*Id.*). Plaintiff argues Osborne is not entitled to qualified immunity because he was not performing a discretionary task and there was no probable cause or arguable probable cause, the detention of Plaintiff was unreasonable, and Osborne used excessive force.  (*Id.*).  Defendants filed reply briefs in response to Plaintiff's opposition.  (Docs. # 36, 37).

## III.  Plaintiff's First Amended Complaint Is Due To Be Denied

As a preliminary matter, on November 18, 2015, Plaintiff filed his First Amended Complaint.  (Doc. # 34).  Plaintiff's time to amend his Complaint as a matter of course had long passed by that date, and he did not file a motion to amend or provide written consent from Defendant.  *See* Fed. R. Civ. P. 15.  Defendant opposed the filing.  (Doc. # 38).  Thus, the court treats the First Amended Complaint as a motion to amend.  Although a district "court should freely give leave when justice so requires," the court does not find leave is due to be given here. Fed. R. Civ. P. 15(a)(2).  To be sure, the proposed First Amended Complaint does provide some

additional factual allegations, and omits some state law causes of action; however, the additional facts are largely immaterial and would not save the complaint from dismissal.[3]  A court need not grant leave to amend if "a more carefully drafted complaint could not state a claim and is, therefore, futile."  *Johnson v. Boyd*, 568 Fed. Appx. 719, 723 (11th Cir. 2014).  Because the court determines the proposed First Amended Complaint does not state a claim, it concludes that leave to amend is due to be denied, and the proposed amendment is due to be rejected.

## IV.    Standard of Review for Motions for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial.  The standard is a familiar one.  "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law."  *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001) (citations omitted); *see Bank of New York Mellon v. Estrada*, No. 12-cv-5952, 2013 WL 3811999, at *1 (N.D. Ill. July 22, 2013) ("A Rule 12(c) motion for judgment on the pleadings is 'designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice.'" (citations omitted)).  The court must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party.  *Cannon*, 250 F.3d at 1301.

A Rule 12(c) motion for judgment on the pleadings is analyzed the same as a Rule 12(b)(6) motion to dismiss.  *Pipes v. City of Falkville, Ala.*, No. 12-cv-2885, 2013 WL 3367105, at *1 (N.D. Ala. July 5, 2013) (adopting report and recommendation); *see also Losey v. Warden*, 521 Fed. Appx. 717, 719 (11th Cir. 2013) ("A motion to dismiss and a motion for judgment on

---

[3] In fact, some of those facts would only support dismissal of certain of Plaintiff's claims.  For example, Plaintiff has alleged facts that indicate the search occurred outside Plaintiff's business building.  (*See* Doc. # 34).

the pleadings should not be granted unless 'the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (citations omitted)).  Accordingly, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also Losey*, 521 Fed. Appx. at 719 (applying plausibility standard articulated in *Iqbal* to Rule 12(c) motion).

A complaint states a plausible claim for relief "when [a] plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Although detailed facts are not needed, a plaintiff is obligated to provide as grounds for entitlement to relief more than mere labels and conclusions.  *Id.*  Formulaic recitations of the elements of a cause of action do not satisfy a plaintiff's burden.  *Id.*  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.

## V.     Analysis

The City of Bessemer argues that Plaintiff lacks standing to seek declaratory and injunctive relief, has not alleged a plausible unconstitutional municipal policy, and that it cannot be held liable for the supervision, training and retention claims, intentional assault and battery, and punitive damages.  (Docs. # 28, 36).  Osborne contends he is entitled to qualified immunity for Plaintiff's claims under the Fourth and Fourteenth Amendments, is not liable for assault and battery, and that no other claims apply to him.  (Docs. # 30, 37).  The court agrees on all counts.

### A.     Plaintiff Lacks Standing To Seek Declaratory and Injunctive Relief

Plaintiff seeks a declaration that the City of Bessemer's alleged policy is unconstitutional, and asks for an injunction.  However, "[i]t goes without saying that those who seek to invoke the

jurisdiction over the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To demonstrate the existence of Article III standing, a plaintiff must meet three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

Here, Plaintiff has not shown that there is an "actual or imminent" injury he may suffer that would allow for declaratory and injunctive relief. *Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 49, 155 (1990)). At most, he alleged a single incident of past illegal conduct. However, the Supreme Court has held that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). To be sure, "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. But here the prospect of future injury rests on the likelihood that [Plaintiff] will again be arrested for and charged with violations of the criminal law and will again be subjected to . . . proceedings, trial, or sentencing" by Defendants. *Id.* at 496. No case or controversy exists simply because Plaintiff anticipates Defendants will commit unlawful searches, seizures, and detentions. *See Lyons*, 461 U.S. at 103. To the contrary, the court "assume[s] that [Defendants] will conduct their activities within the law" and the Constitution. *O'Shea*, 414 U.S. at 497.

Further, although Plaintiff alleged that Osborne made a threat to him, the court "can only speculate whether [Plaintiff] will be arrested." *O'Shea*, 414 U.S. at 497.  The incident allegedly occurred on June 9, 2012; Plaintiff has not submitted any additional allegations that in the two years between that date and the filing of his Complaint that Osborne took any further actions against him.  (*See* Doc. # 1).  And, Plaintiff's conclusory allegations of the existence of a City policy or ratification of police officers' conduct by the City are simply not enough to establish an actual case or controversy that would allow for declaratory or injunctive relief.  *See Lyons*, 461 U.S. at 106-07.  Accordingly, Plaintiff lacks standing to seek an injunction against the City's alleged policy, and Count II of the Complaint is due to be dismissed.

### B.    Plaintiff Has Not Alleged a Plausible *Monell* Policy by the City of Bessemer

Plaintiff contends he is due money damages based on the City's alleged unconstitutional policy encouraging unlawful arrests.  (Doc. # 1).  "The Supreme Court has placed strict limitations on municipal policy under section 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).  As explained in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), "a municipality may be held liable for the actions of a police officer only when municipal 'official policy' causes a constitutional violation." *Id.* (citing *Monell*, 436 U.S. at 694-95).  Accordingly, to hold a municipality liable, Plaintiff "must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  A policy is defined as a "decision that is officially adopted by the municipality. . . ." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479-80 (11th Cir. 1991)).

A custom is defined as a "practice that is so settled and permanent that it takes on the force of law." *Id.* (citing *Monell*, 438 U.S. at 690-94).

Here, even if Plaintiff shows his constitutional rights were violated, in order to prevail on his claim he must demonstrate the City had an unconstitutional policy or custom. *See Wilson v. Tillman*, 613 F. Supp. 2d 1254, 1266 (S.D. Ala. 2009) ("[T]he city of [Bessemer] is not automatically liable under § 1983 even if it inadequately hired, trained or supervised its police officers and those officers violated [Plaintiff's] unconstitutional rights."). "To show an unconstitutional policy or custom, [P]laintiff must identify the policy or custom, connect the policy or custom with the government entity itself, and show that the particular injury was incurred because of the execution of that policy." *Id.* (citing *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (*en banc*)). "In order for a plaintiff to demonstrate a policy or custom, it is 'generally necessary to show a persistent and wide-spread practice." *McDowell*, 392 F.3d at 1290 (quoting *Wayne v. Jarvis*, 197 F.3d 1098 (11th Cir. 1999)).

Plaintiff has not alleged a sufficient factual basis for his claim against the City of Bessemer. "For obvious reasons, Plaintiff did not aver any facts relating to a formal policy adopted by the City commanding its officers to commit" unlawful arrests and searches. *Smith v. City of Sumiton*, No. 12-cv-03521, 2013 WL 3357573, at *3 (N.D. Ala. July 2, 2013), *aff'd* 578 Fed. Appx. 933 (11th Cir. 2014) (*per curiam*). Likewise, Plaintiff has not stated with any factual specificity a custom practiced by the City allowing such behavior on the part of its officers.

In his brief, however, Plaintiff argues that the City can be held liable because it has established a policy or custom of deliberate indifference to the rights of others by knowing of a need, but failing, to adequately train or supervise police officers. (Doc. # 35). "A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the

level of a 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct." *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994) (quoting *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)); *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989).  Thus, to prove the existence of purported policy or custom of deliberate indifference by the City, Plaintiff must show that the City had notice of a need to adequately train or supervise police officers but purposefully did nothing.  *See Sumiton*, 2013 WL 3357573, at *4 (quoting *Gold*, 151 F.3d at 1350) ("To show 'deliberate indifference,' a plaintiff must present some evidence to demonstrate 'that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.'").  "[W]ithout notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train or supervise." *Gold*, 151 F.3d at 1351.  And, a municipality often can reasonably rely on its officers' common sense rather than implementing formal training:  "[w]here the proper response . . . is obvious to all without training or supervision, then the failure to train or supervise is generally not so likely to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." *Walker v. New York*, 974 F.2d 293, 299-300 (2d Cir. 1992) (internal quotations omitted); *see also Sewell*, 117 F.3d at 490 (stating that the Eleventh Circuit is "persuaded that the Second Circuit's interpretations of *City of Canton* is correct").

   "The only real question before the court now is whether Plaintiff has alleged with enough factual specificity that a pattern of misconduct by the officers has made Defendant City of [Bessemer]'s alleged lack of training or supervision rise to the level of deliberate indifference." *Sumiton*, 2013 WL 3357573, at *4.  Indeed, a pattern of known misconduct may be sufficient to

change a municipality's reasonable reliance on officer's common sense into deliberate indifference. *See Walker*, 974 F.2d at 301. But, nothing in the pleadings suggests that the City's police officers do no not know that searches and arrests without a warrant or probable cause, and committed with excessive force, are illegal.

Plaintiff complains that "the City of Bessemer has permitted, encouraged, tolerated and ratified a pattern and practice of unjustified, unreasonable and excessive use of force by its police officers." (Doc. # 1 at ¶ 25). He makes additional, similar conclusory allegations (*see id.* at ¶¶ 25, 27, 28), including that the City "knew or should have known that Defendant Osborne was prone to commit acts of misfeasance, malfeasance and violations of the civil rights of Mr. Dial and other persons." (*Id.* at ¶ 28). But Plaintiff does not point to a single specific fact, date, or name of another victim. Similarly, he has not alleged any facts regarding the number and frequency of any alleged prior incidents. He also has not pointed to the existence of official awareness of past police misconduct by Defendant Osborne or other officers in the City of Bessemer. *See Church*, 30 F.3d at 1345. While Rule 8 does not mandate detailed factual allegations in a complaint, it requires "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Because Plaintiff has not averred with factual specificity any prior instances of unlawful searches, arrests, and use of excessive force by Osborne (or any other officers), the court must disregard these allegations as conclusory statements. *See Gray v. City of Roswell*, 486 Fed. Appx. 798, 800-01 (11th Cir. 2012) (*per curiam*) (affirming dismissal of municipal liability claims because claimant did not "recite any facts or policies which would support a claim against the City," and instead makes only conclusory statements and "threadbare recitals"); *Barr v. Gee*, 437 Fed. Appx. 865, 874-85 (11th Cir. 2011) (*per curiam*) (affirming dismissal of municipal liability claims because plaintiff

11

"offered no factual allegations to support a plausible inference that" a municipal custom of tolerating violations of constitutional rights, "and a single incident does not support an inference" of an official policy or custom).

The remaining "well-pleaded" facts in the Complaint, even accepted as true, are insufficient to support Plaintiff's claims as plausible.  He has not alleged any facts suggesting he may discover evidence in support of his claim.  Therefore, his municipal liability claim is due to be dismissed.

### C.   Defendants Are Not Liable for Plaintiff's Supervision, Training, and Retention Claims

Plaintiff's claims for negligent or wanton and willful supervision, training, and retention likewise are due to be dismissed.  There are no allegations that Osborne is or was involved in any sort of supervisory or other position with the ability to make decisions concerning the supervision, training, and retention of other police officers.  (*See* Doc. # 1).  And, Osborne denies that these causes of action lie against him.  (Doc. # 23 at ¶¶ 41, 46, 51; Doc. # 29).  Plaintiff has not disputed this argument in his response.  (*See* Doc. # 35).  Thus, these particular claims against Osborne are due to be dismissed.

The claims also are due be dismissed as to the City.  Section 11-47-910 of the Alabama Code provides that a city or town may be liable for damages arising from "the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty."  However, "[n]o Alabama court has expressly recognized a cause of action against a municipality for a supervisor's negligent training or supervision of a subordinate."  *Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1258 (M.D. Ala. 2010) (citations omitted); *see also Doe v. City of Demopolis*, 799 F. Supp. 2d 1300, 1311 (S.D. Ala. 2011) (holding that a claim of negligent training or supervision is not cognizable

under Alabama law). Indeed, Plaintiff has not cited any cases suggesting the contrary result, and this court has not located any in its own research. Under Alabama law, "the liability of an employer for negligent supervision or training requires, among other elements, proof of the employer's actual or constructive awareness of the employee's incompetency." *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1315 (S.D. Ala. 2001) (citation omitted). Plaintiff has alleged "no evidence of this element, and because [he] ha[s] not identified any such evidence," the negligent supervision and training counts are due to be dismissed.[4] *Id.*

Plaintiff alternatively alleges that the City is liable for willfully and wantonly breaching its duty to properly supervise, train, and retain officers. (Doc. # 1). Neither party addresses these alternative allegations in their briefs—and perhaps with good reason. "Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability." *Ex parte Essary*, 992 So.2d 5, 9 (Ala. 2007) (quoting *Tolbert v. Tolbert*, 903 So.2d 103, 114-15 (Ala. 2004)) (additional citations omitted). "'Simple negligence is the inadvertent omission of duty; and wanton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted.'" *Id.* at 9-10 (quoting *Tolbert*, 903 So.2d at 114-15 (quoting in turn *McNeil v. Munson S.S. Lines*, 184 Ala. 420, 423 (1913))). Alabama

---

[4] Plaintiff cites *Hardy v. Town of Hayneville*, 50 F. Supp. 2d 1176 (M.D. Ala. 1999) in support of his argument that the City may be liable for negligent retention under Section 11-47-910. *See* 50 F. Supp. 2d at 1192 (recognizing that the defendant "city may be held liable for negligent hiring"). *Hardy*, however, is distinguishable. The facts in *Hardy* suggest that the municipal defendant held a meeting to determine the employment status of an officer alleged to have violated the plaintiff's constitutional rights, among other things, and then continued to retain that officer as an employee. *See id.* at 1184. Simply put, Plaintiff does not allege any facts here concerning any decisions or other actions by the City regarding the retention (or hiring) of Osborne (or other officers), including any reasons why the City might have been on notice not to retain them. (*See* Doc. # 1). Moreover, *Hardy* concerned a Rule 12(b)(6) motion to dismiss. The standard of review for motions to dismiss at the time *Hardy* was decided (1999) was understood by that court to be "exceedingly low," and allowed for dismissal of "a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint." 50 F. Supp. 2d at 1183 (quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). The United States Supreme Court has since enunciated that a complaint must allege a set of plausible facts. *See Iqbal*, 556 U.S. at 678. Plaintiff's Complaint here points to only one possible instance of unlawful behavior by Osborne and other officers— which does not plausibly suggest that the City negligently hired, supervised, or retained them. (*See* Doc. # 1). Without any supporting, plausible factual averments, the claim is due to be dismissed.

13

Code § 11-47-190 does not expressly allow or prohibit suits against municipalities for wanton behavior. The Alabama Supreme Court has held that "[t]o construe this statute to include an action for wanton conduct would expand the language of the statute beyond its plain meaning." *Hilliard v. City of Huntsville*, 585 So.2d 889, 892 (Ala. 1991) (affirming dismissal of wantonness claim against municipality under Section 11-47-190 in a motion for judgment on the pleadings); *accord Ex Parte Labbe*, 156 So.3d 368, 373 (Ala. 2014). Accordingly, the City of Bessemer cannot be held liable for the alleged wanton or willful claims Plaintiff has alternatively alleged as a matter of law.

### D.    The City of Bessemer Cannot Be Held Liable for Osborne's Intentional Torts

The City of Bessemer also argues it cannot be held liable for the alleged assault and battery committed by Osborne. (Doc. # 28). Again, perhaps for good reason, Plaintiff does not dispute (or address) this argument in his brief. (*See* Doc. # 35). "Assault" has been defined in Alabama as "an intentional, unlawful, offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented." *Harris v. Lombardi*, 897 So.2d 1136, 1137 (Ala. Civ. App. 2004) (citation omitted). "A battery occurs when one actually touches another in a hostile manner." *Kmart Corp. v. Perdue*, 708 So.2d 106, 110 (Ala. 1997) (citation omitted). The touch must be intentional. *Ex parte Atmore Community Hosp.*, 719 So.2d 1190, 1193 (Ala. 1998). Thus, Plaintiff's claim of assault and battery clearly sounds in intentional conduct. Under Alabama Code § 11-47-190, a municipality cannot be held liable for the intentional torts of its employees and agents.[5] *See Romero v. City of Clanton*, 220 F. Supp. 2d 1313, 1319 (M.D. Ala. 2002)

---

[5] To be sure, the Alabama Supreme Court has held that a municipality is not immune from liability under Section 11-47-190 for claims of excessive use of force, false arrest, false imprisonment, and assault and battery

(citing Ala. Code § 11-47-190) ("Intentional torts cannot be brought against municipalities.");
*see also Ex parte City of Gadsden*, 718 So.2d 716, 721 (Ala. 1998) ("Section 11-47-190. . .
absolves a city from liability for an intentional tort committed by one of its agents. . . .").
Accordingly, the City cannot be held liable for Osborne's alleged assault and battery.  That claim
is therefore due to be dismissed as to it as a matter of law.

> ### E.     The City of Bessemer Cannot Be Held Liable for Punitive Damages

Plaintiff seeks punitive damages against the City.  (Doc. # 1).  However, a municipality
such as the City of Bessemer "is immune from punitive damages under 42 U.S.C. § 1983."
*Harrelson v. Elmore Cty., Ala.*, 859 F. Supp. 1465, 1467 (M.D. Ala. 1994) (quoting *City of
Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)).  Likewise, the Alabama Code
expressly prohibits the recovery of punitive damages from a municipality except in
circumstances inapplicable here.  Ala. Code § 6-11-26; *accord Harrelson*, 859 F. Supp. at 1469.
Thus, Plaintiff's demand for punitive damages against the City of Bessemer is due to be
dismissed as a matter of law.

> ### F.     Plaintiff's Official Capacity Claims against Osborne Are Due To Be Dismissed

Plaintiff alleges Osborne is liable for the complained-of acts in both his individual
capacity and official capacity as a police officer for the City of Bessemer.  Although Osborne did
not address the official capacity claims in his brief, those claims are nonetheless due to be
dismissed.  Official-capacity suits

---

when those claims are based upon "alleged neglect, carelessness, and unskillfulness."  *Borders v. City of Huntsville*, 875 So.2d 1168, 1183-84 (Ala. 2003).  However, "[t]he factual issues in this case are not over whether [Osborne's and other officer]'s acts were intentional, but over . . . the extent of force [Osborne] used."  *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 743 (11th Cir. 2010) (distinguishing *Borders*).  And, the allegations concerning the extent of force used are that Osborne "touched the person of the Plaintiff in an angry and hostile manner."  (Doc. # 1 at ¶ 61).  That recitation of elements, coupled with the factual allegations of the Complaint, demonstrate Plaintiff alleges intentional assault and battery.

> "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell*, 436 U.S. at 690 n. 55; citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)). In other words, official-capacity suits are subsumed into an action alleged against the municipality that employs its agent in an official capacity. Here, the City received notice and has clearly responded. For the reasons discussed above, the claims against the City are due to be dismissed. It follows also that the official-capacity claims against Osborne are likewise due to be dismissed.

### G.   Osborne Is Entitled To Qualified Immunity on Plaintiff's Constitutional Claims

Osborne asserts that qualified immunity applies and protects him from Plaintiff's Section 1983 claims for excessive force, false imprisonment, and unreasonable search and seizure. (Doc. # 30). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "is intended to 'allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Brown v. City of Huntsville*, 608 F.3d 724, 733 (11th Cir. 2010) (hereinafter, "*Brown*") (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). Thus, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow*, 457 U.S. at 818.

The Eleventh Circuit has instructed courts to utilize a multi-step, burden-shifting analysis to determine if an official is entitled to qualified immunity.  Accordingly, in order for Osborne to establish that he is entitled to qualified immunity, he "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. . . .  Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  *Penley v. Eslinger*, 605 F.3d 843, 849 (11th Cir. 2010) (quoting *Lee*, 284 F.3d at 1194).  To determine whether Plaintiff has met his burden, "[t]he threshold inquiry . . . is whether [P]laintiff's allegations, if true, establish a constitutional violation."  *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (in turn citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001))).  Additionally, Plaintiff may defeat qualified immunity by showing that clearly established law dictates, "that is, truly compel[s] (not just suggest[s] or allow[s] or raise[s] a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances."  *Sanders v. Howze*, 177 F.3d 1245, 1250 (11th Cir. 1999) (citations and quotations omitted).  The facts from prior cases "need not be the same as the facts of the immediate case, but they do need to be materially similar."  *Id.* (citation omitted).

Whether an official's actions fall within the scope of discretionary authority is a two-fold inquiry: (1) the government employee must be "performing a legitimate job-related function," (2) "through means that were within his power to utilize."  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (citation omitted).  "The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act," as Plaintiff argues. *Harbert Intl., Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (citations omitted).  "Arrests and attempted arrests are classified as discretionary functions," as are questioning and searching.

*Telfare v. City of Huntsville*, 841 So.2d 1222, 1228 (Ala. 2002); *see also Exford v. City of Montgomery*, 887 F. Supp. 2d 1210, 1221 (M.D. Ala. 2012) (finding officers used authorized force during temporary detainment, questioning, and eventual arrest of plaintiff).

Plaintiff alleges that "[a]t the time of the incident, the officers [including Osborne] were, in fact, on duty and engaged in performing their job responsibilities as police officers for the City of Bessemer."   (Doc. # 1 at ¶ 17).   Thus, Osborne's argument that he was performing discretionary functions is bolstered by Plaintiff's allegations that Osborne was questioning, searching, and arresting.   These are all discretionary actions of police officers.   The relevant inquiries therefore focus on whether Plaintiff can show that qualified immunity is inappropriate.

### 1.      There Was Not an Unreasonable Search and Seizure

Plaintiff argues that Osborne conducted an unreasonable search of his business premises. The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."   *U.S. v. Jones*, --U.S. --, 132 S. Ct. 945, 949 (2012).   An individual's reasonable expectation of privacy in his place of business under the Fourth Amendment is "less than [] a similar expectation in an individual's home."   *Fortson v. City of Elberton*, 592 Fed. Appx. 819, 822 (11th Cir. 2014) (quoting *New York v. Burger*, 482 U.S. 691, 699 (1987)) (change in *Fortson*) (additional citation omitted).   Stated otherwise, "[a]n individual's right to privacy in his place of business is not absolute."   *Id.*   "What is observable by the public is observable, without a warrant, by the Government inspector as well."   *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 315 (1978); *see also United States v. Hall*, 47 F.3d 1091, 1096 (11th Cir. 1995) ("[A] commercial proprietor has a reasonable expectation of privacy only in those areas where affirmative steps have been taken to exclude the public.").   Thus, "a law enforcement officer may enter a

commercial premises open to the public and observe what is in plain view." *United States v. Various Gambling Devices*, 478 F.2d 1194, 1200 (5th Cir. 1973);[6] *see also Coffin v. Brandau*, 642 F.3d 999, 1012 (11th Cir. 2011) (police officers "can enter onto [an individual's] property ... in order to carry out legitimate police business").

Although Plaintiff alleges Osborne (and the non-party officers) lacked probable cause to search his business premises, he has not alleged that the search was conducted anywhere that a member of the public could not go.  (*See* Doc. # 1).  First, by his assertion, his business was still open at the time of the search.  (*See id.* at ¶ 7); *see also United States v. Sandoval-Vasquez*, 435 F.3d 739, 743 (7th Cir. 2006) ("That Sandoval-Vasquez's business may have been in the process of closing does not help him, as the fact remains that the business was still open when the officers entered.").  Second, the parties in their briefs specify that the "roach" of marijuana was found in the business's parking lot.[7]  (*See* Docs. # 30, 35).  Obviously, a "roach" of marijuana in a parking lot would have been observable by any member of the public who walked through the parking lot.

Moreover, and in any event, the Complaint does not specify or identify with any clarity the officers involved in the search.  (*See* Doc. # 1).  *Cf. also Richardson v. Johnson*, 598 F.3d 724, 738 (11th Cir. 2010) (fictitious party pleading allowed in federal court only when pleading party alleges with sufficient specificity that fictitious party may be identified).  Plaintiff has not alleged that Osborne personally conducted a search; but, even assuming he did, Plaintiff only alleges "one of the officers who was out of the view of everyone else emerged with" the

---

[6] The decisions of the former Fifth Circuit issued prior to the close of business on September 30, 1981, have been adopted as binding precedent by the Eleventh Circuit.  *See Bonner v. City of Prichard, Ala.*, 662 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

[7] Also, the facts alleged in the Complaint reasonably imply that at least much of the activity surrounding Plaintiff's questioning and arrest occurred outside his business.  (*See* Doc. # 1)

marijuana.  (Doc. # 1 at ¶ 13).  Plaintiff clearly knows which officer was Osborne, and the court draws a reasonable inference that the reference to "one of the officers"—that is, the officer who recovered the marijuana—was not Osborne. Therefore, based on Plaintiff's own averments, the court cannot conclude that Osborne conducted an unreasonable search.

### 2.   Osborne Had Arguable Probable Cause To Arrest Plaintiff

Plaintiff alleges that Osborne (and the other officers) lacked probable cause or arguable probable cause to arrest and detain him (that is, they falsely imprisoned him).  There is no dispute that the officers did not have an arrest warrant.

Although hindsight demonstrates that Osborne may not have had actual probable cause, so long as he had "arguable" probable cause, he may still receive qualified immunity.  *See Brown*, 608 F.3d at 734 (citing *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003); *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997)).  "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'"  *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010) (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004)) (additional citations omitted).  "'Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable.'"  *Id.* (quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)) (additional citations omitted).  The standard is objective and does not include an inquiry into the officer's subjective intent or beliefs.  *Brown*, 608 F.3d at 735 (citing *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010)).

Whether an officer possesses arguable probable cause depends on the alleged crime's elements and the operative fact pattern.  *Girder*, 618 F.3d at 127 (citing *Skop v. City of Atlanta*, 485 F.3d 1130, 1137-38 (11th Cir. 2007); *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1333 (11th Cir. 2004)).  However, every element of a crime need not be proven to show arguable probable cause. *Brown*, 608 F.3d at 135 (citing *Scarborough v. Myles*, 245 F.3d 1299, 1302-03 (11th Cir. 2001)). So long as the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply.  *Id. (*citing *Skop*, 485 F.3d at 1138).

Plaintiff was arrested due to the marijuana found at his business premises.  (Doc. # 1 at ¶ 14).  Misdemeanor possession of marijuana in Alabama requires a person to possess marijuana for personal use only.  Ala. Code § 13A-12-214.   That possession requirement includes (in order to obtain a conviction) constructive possession.  *See, e.g.*, *Hamilton v. State*, 496 So.2 100, 103-04 (Ala. Crim. App. 1986).  But, "[t]he exercise of control does not have to be at the time of the arrest."  *Boswell v. State*, 570 So.2d 818, 819 (Ala. Crim. App. 1990) (citation omitted).  Thus, although Osborne (or the other officers) may not have located any marijuana or other contraband on Plaintiff's person, finding the marijuana on his business premises could supply a reasonable officer with arguable probable cause that Plaintiff constructively possessed the marijuana.  *See Hamilton*, 496 So.2d at 104 ("must drug users separate themselves from their contraband as soon as a police officer approaches their person, residence or automobile").  Plaintiff has not pointed this court to any supporting case law to the contrary.  Based on the totality of the circumstances, the court concludes that arguable probable cause existed to arrest Plaintiff.  Therefore, Osborne is entitled to qualified immunity on the false arrest claim.

### 3.   Osborne Has Qualitative Immunity with Respect to Plaintiff's Excessive Force Claim

Plaintiff has asserted a cause of action for excessive force under the Fourth Amendment. "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Brown*, 608 F.3d at 737 (quoting *Lee*, 284 F.3d at 1197 (in turn citing *Graham v. Connor*, 490 U.S. at 394-95 (1989) (hereinafter, "*Graham*")).   Nevertheless, "'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Id.* (quoting *Lee*, 284 F.3d at 1197 (in turn quoting *Graham*, 490 U.S. at 396)).   Having said that, although some force is permitted in effecting an arrest, the determination of whether the force used was reasonable depends on "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 737-38 (quoting *Vinyard*, 311 F.3d at 1347).

"'[I]n determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted.'" *Hawkins v. Carmean*, 562 Fed. Appx. 740, 743 (11th Cir. 2014) (*per curiam*) (quoting *Draper v. Reynolds*, 369 F.3d 1270, 1277-78 (11th Cir. 2004) (in turn quoting *Lee*, 284 F.3d at 1198)) (alteration in *Draper*).   A court must look to the "totality of the circumstances" and judge the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. at 396.   In balancing the need for force against an arrestee's constitutional rights, a court "must evaluate several factors, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

or attempting to evade arrest by flight.'" *Vinyard*, 311 F.3d at 1347 (quoting *Graham*, 490 U.S. at 396). However, "[e]ven if an officer uses excessive force, []he is entitled to qualified immunity if 'an objectively reasonable officer in the same situation could have believed the use of force was not excessive.'" *Hawkins*, 562 Fed. Appx. at 743 (quoting *Brown*, 608 F.3d at 738). "The only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009) (citing *Graham*, 490 U.S. at 396).

Here, Plaintiff alleges Osborne "snatched" his arm and "threw him into the back" of a patrol car, bent his wrist when obtaining his driver's license, and affixed handcuffs tightly (Plaintiff claims to the point of unspecified injury). (Doc. # 1 at ¶¶ 11, 14). Even though Plaintiff was not charged with resisting arrest, the court determines, based upon the pleadings, that there is no plausible assertion that there was a "gratuitous use of force." *Brown*, 608 F.3d at 738 (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) ("Our cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."); *see, e.g.*, *Gold*, 121 F.3d at 1446-47 (finding permissible force when handcuffs affixed too tightly during arrest for disorderly conduct); *Jones v. City of Dothan, Ala.*, 121 F.3d 1456, 1460 (11th Cir. 1997) (finding force used permissible when officers "slammed" plaintiff against wall, kicked his legs apart, made him raise his arms above his head, and pulled his wallet from his pants, while looking for and questioning suspect); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559-60 (11th Cir. 1993) (not excessive force to arrest plaintiff for building code violation by pushing him against wall and applying chokehold while affixing handcuffs despite no resistance). An objectively reasonable police officer would know using minor force to temporarily detain a suspect, obtain identification, and then arrest the suspect was lawful (at least

at the time of Plaintiff's arrest)—particularly when acting alone and in search of another individual that the detained suspect (as was the case here).[8]  Therefore, Osborne is entitled to qualified immunity on Plaintiff's excessive force claim.

### H.    Plaintiff Has Not Plausibly Alleged Osborne Committed Assault and Battery

Finally, Plaintiff contends Osborne committed the state law tort of assault and battery. (Doc. # 1 at ¶¶ 61-63).  To the contrary, Osborne argues that he used entitled *de minimis* force. (Doc. # 30).  Plaintiff does not expressly address this argument in his opposition brief (*see* Doc. # 35), and at oral argument he did not object to the court's observation that this claim arises out of, and is related to, the excessive force claim.  *See, e.g.*, *United States v. Clark*, 337 F.3d 1282, 1286-87 (11th Cir. 2003) (citing *Hudson v. Hall*, 231 F.3d 1289, 1297 (11th Cir. 2000) (citing in turn *Maryland v. Wilson*, 519 U.S. 408, 415 (1997); *Michigan v. Summers*, 452 U.S. 692, 702-03 (1981))).

> Under Alabama law,
>
> "Assault" has been defined as "an intentional, unlawful, offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented." *Western Union Tel. Co. v. Hill,* 25 Ala. App. 540, 542, 150 So. 709, 710 (1933). . . .  "'A battery consists in an injury actually done to the person of another in an angry or revengeful or rude or insolent manner, as by spitting in the face, or in any way touching him in anger, or violently jostling him out of the way, or in doing any intentional violence to the person of another.'" *Surrency v. Harbison,* 489 So.2d 1097, 1104 (Ala.1986) (quoting *Singer Mach. Co. v. Methvin,* 184 Ala. 554, 561, 63 So. 997, 1000 (1913) ...).

*Harris v. Lombardi*, 897 So. 2d 1136, 1137-38 (Ala. Civ. App. 2004) (quoting *Wood v. Cowart Enters., Inc.*, 809 So.2d 835, 837 (Ala. Civ. App. 2001)).  "The plaintiff in an action alleging assault and battery must prove '(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive

---

[8] Plaintiff has not alleged any use of force occurred after he was handcuffed.

manner.'"  *Walker v. City of Huntsville*, 62 So.3d 474, 494 (Ala. 2010) (quoting *Harper v. Winston Cty.*, 892 So.2d 346, 353 (Ala. 2004) (quoting in turn *Atmore Cmty. Hosp.*, 719 So.2d at 1193)).  However, Alabama applies additional rules when a police officer commits an alleged assault and battery: "'[i]n making the arrest, a police officer may use reasonable force and may be held liable only if more force is used than is necessary to effectuate the arrest.'"  *Walker*, 62 So.3d at 494 (quoting *Franklin v. City of Huntsville*, 670 So.2d 848, 852 (Ala. 1995) (citing Ala. Code § 13A-3-27(a)[9])).

The Alabama Supreme Court *Walker* decision is instructive.  There, the court considered a state law assault and battery claim (among others) that was initially brought pursuant to a federal court's supplemental jurisdiction in a Section 1983 action, but which was dismissed and remanded under 28 U.S.C. § 1367.  *See Walker*, 62 So.3d at 478.  Significantly, the federal case included an excessive force count.  *See id.*  After reciting Alabama's legal rules for assault and battery (stated *supra*), the *Walker* court observed that "[t]he issue decided by the federal court is ... identical to the issue raised by Walker's assault and battery claim," and therefore determined the latter claim to be resolved.  *Id.* at 494.  Importantly, "[t]he federal court based its determination on federal precedent that allows the use of reasonable or *de minimis* force during an arrest, citing *Graham*, 490 U.S. at 397; *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003); *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000); and *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997)."  *Id.*

To be sure, the primary issue in *Walker* was whether the federal court's conclusion that the arresting officers utilized *de minimis* rather than excessive force collaterally estopped the

---

[9] Section 13A-3-27(a)(1) justifies an officer's use of reasonably necessary physical force to make an arrest for a misdemeanor or violation, "unless the peace officer knows that the arrest is unauthorized."  Likewise, Section 13A-3-27(b)(1) allows the same justification for felony arrests.  As discussed above, arguable probable cause existed for Plaintiff's arrest.

plaintiff's assault and battery claim in state court.  *See Walker*, 62 So.3d at 494.  Two key elements of collateral estoppel are the involvement of the same parties and identical issues in the separate actions.  *E.g.*, *Lloyd Noland Foundation, Inc., v. HealthSouth Corp.*, 979 So.2d 784, 795-96 (Ala. 2007).  Thus, in this case, as in *Walker*, the alleged force used during Plaintiff's arrest is the same for the excessive force and the assault and battery claims, and it is appropriate to adjudge that force utilizing federal standards.  While this case does not call upon the court to apply preclusion principles, the *Walker* decision demonstrates why the court's analysis of the excessive force claim applies equally to the assault claim.

The Eleventh Circuit's proclamation in *Brown* is also fully applicable to Plaintiff's assault and battery claim: "A law enforcement officer's right to arrest necessarily carries with it the ability to use some force in making the arrest.  For even minor offenses, permissible force includes physical restraint, use of handcuffs, and pushing into walls."  *Brown*, 608 F.3d at 740 (internal and other citations omitted).  As discussed above, the force Osborne allegedly used during the arrest was related to that arrest: throwing Plaintiff into a patrol car, bending Plaintiff's wrist to obtain his driver's license, and tightly placing cuffs on him.[10]  (Doc. # 1 at ¶¶ 11, 14).  This type of force has been found to be permissible.  *See, e.g.*, *Gold*, 121 F.3d at 1446-47; *Post v.*, 7 F.3d at 1559-60.  Here, because the "only evidence relating" to the assault and battery claim "relates to [Osborne]'s use of force during [Plaintiff]'s arrest."  *Walker*, 62 So.3d at 494.  As that force was *de minimis* and permissible, the assault and battery claim is due to be dismissed.  *Id.*

---

[10] Likewise, the minor force used during pre-arrest questioning was *de minimis* and, the court concludes, for the reasons stated *supra*, lawful.

**VI.**     **Conclusion**

For all these reasons, Plaintiff's proposed First Amended Complaint (Doc. # 34) is due to be denied, Defendants Motions for Judgment on the Pleadings (Docs. # 27, 29) are due to be granted, and this case is due to be dismissed.  The court will enter a separate order.

**DONE** and **ORDERED** this May 31, 2016.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE